# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSLYVANIA

DONALD L. MOSHIER, JR. )

Reg. No. 10924-052 )

FCI Schuylkill, P.O. Box 759 )

Minersville, PA 17954-0759 )

Plaintiff/Petitioner(s), )

-vs- )

FEDERAL BUREAU OF PRISONS et al. )

Warden, Troy Williams;
Captain E. Bradely; )
Mr. W.W. Wagner, (case Mgr.) )
Mr. Childress, (unit Mgr.) )
Mr. K.A. Metzger, (corr. counselor) )

Defendant/Respondent(s). )

Docket No. _____
(To be supplied by the Clerk)

☐ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983
(State Prisoner)

☒ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331
(Federal Prisoner)

☒ CIVIL COMPLAINT
pursuant to the Federal Tort **FILED**
Act, 28 U.S.C. §1346, 2671-2680 **SCRANTON**

**MAR 2 0 2008**

PER _____
**DEPUTY CLERK**

I. **JURISDICTION**

A. Plaintiff's mailing address and/or register number and present place of
#10924-053; P.O. Box 759, FCI Schuylkill

Minersville, PA 17954

B. Defendant __Troy Williams__ is employed as
(Name of First Defendant)
__Warden__
(Position/Title)
with __FEDERAL BUREAU OF PRISONS USP LEWISBURG__
(Employer's Name and Address)
__LEWISBURG, PA__

C. At the time the claim(s) alleged in this complaint arose, was the defendant employed
by the state, local or federal government?

Yes (X)        No ( )

If your answer is "yes", briefly explain:
All defendants listed above worked for the BOP at the time of this
incident.

D.   Defendant   TROY WILLIAMS _____ is employed as
                 (Name of First Defendant)

_____
                 (Position/Title)

with  For the United States Government, Washington, DC
_____
                 (Employer's Name and Address)

_____

E.   At the time the claim(s) alleged in this complaint arose, was the defendant employed
     by the state, local or federal government? _____
                                                        By the Federal Government
          Yes (X)            No ( )

     If your answer is "yes", briefly explain:
      All the employee's named in this complaint are employed

      by the U.S. Government, at USP Lewisburg, Lewisburg, PA

     _____

     _____

F.   Using the outline of the form provided, include the above information for any
     additional defendant(s).

     FEDERAL BUREAU OF PRISONS et al

     Mr. W.W. Wagner, (case Mgr.) ; Captain E. Bradely;

     Mr. Childress, (unit Mgr.);

     Mr. K.A. metzger, (corr. counselor)

## II.   PREVIOUS LAWSUITS

A.   Have you begun other lawsuits in state or federal court dealing with the same facts
     involved in this action or otherwise relating to your imprisonment?

          Yes (X)            No ( )

B.   If your answer to "A" is "yes", describe the lawsuit(s) in the space below.  (If there
     is more than one (1) lawsuit, you must describe the additional lawsuits on another
     sheet of paper, using the same outline.)  Failure to comply with this provisions may
     result in summary denial of your complaint.

      Negligent medical treatment with regard to Hepatitis C

1.  Parties to previous lawsuits:

    Plaintiff(s) __DONALD L. MOSHIER, JR._____

    _____

    Defendant(s) __FEDERAL BUREAU OF PRISONS et al._____
    Warden, James Sherman; Dr. Beam; Dr. Olson; Dr. Smith

    _____

2.  Court (if Federal Court, name the District; if State Court, name the County)
    __WESTERN DISTRICT OF PENNSLYVANIA_____

3.  Docket number __05-180- (ERIE)_____

4.  Name of Judge to whom case was assigned __SUSAN PARADISE BAXTER__

5.  Type of case (for example: Was it a Habeas Corpus or Civil Rights action?
    __Civil Rights_____

6.  Disposition of case (for example: Was the case dismissed? Was it appealed?
    Is it still pending?) __The case is still pending_____

    _____

7.  Approximate date of filing lawsuit __11=2004_____

8.  Approximate date of disposition __8-30-07_____

## III.   GRIEVANCE PROCEDURE

A.  Is there a prisoner grievance procedure in the institution? __YES_____

B.  Did you present the facts relating to your complaint in the prisoner grievance
    procedure. Yes (X) No ( )

C.  If your answer is "yes",

    1.  What steps did you take? __After my convalescence from the attack, I made__
        proper procedure via inmate request to Case Mgr. & Counselor.

    2.  What was the result? __I was refused all grievance forms BF-8, until I was__
        transferred to FCI Schuylkill, causing the late filing. The prison has
        hamperd my filing because of this action.

D.  If your answer is "no", explain why not. __I filed the grievance's, allowing my recovery__
    to gain the strength to hold a pencil. Also I was held in Special Housing SHU, until
    I was transferred to FCI Schuylkill, from USP Lewisburg.

    _____

E.  If there is no prisoner grievance procedure in the institution, did you complaint to
    prison authorities? Yes (X)   No ( )

F.   If your answer is "yes",

1.   What steps did you take?  I informed both case Mgr. Mr. Wagner; & Counselor
Mr. Metzger, before I was attacked and stabbed by inmate Logan, and also about
Logan pulling a knife on me and threatening to kill me, because he wanted to
go back to ADX.

2.   What was the result?  They moved Logan out of my cell#105, that same day
12/21/06, to a cell on the second floor, however, in the same unit. On 12/23/06,
Logan attacked and stabbed me 21 times.

G.   If your answer is "no", explain why not. _____
_____
_____
_____

H.   Attach copies of your request for an administrative remedy and the response(s) you
received. If you cannot do so, explain why not: I've completed all Admiistrative Remedys.
However I don't have the money to make copies at this
time, and the staff here at F.C.I.Schuylkill,Refuse to make
for me, even though I've offered to pay in time.

IV.   STATEMENT OF CLAIM ** <u>See.</u> Page (5)

State here, as briefly as possible, the FACTS of your case. State who, what, when, where and
how you feel your constitutional rights were violated. Do not cite cases or statutes. If you
choose to submit legal arguments or citations, you must do so in a separate memorandum
of law. If you intend to allege a number of related claims, number and set forth each claim
in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach
copies of the disciplinary charges and any disciplinary hearing summary as exhibits.

Only two (2) extra pages (8½ x 11") are permitted, if necessary, to complete your statement
of claim. Additionally, attach any relevant, supporting documentation.

FACTUAL BACKGROUND

Donald L. Moshier, Jr. was convicted of possession of a narcotic substance (methamphetamine), a
non-violet Class B Felony, on April 26, 2002, to serve 120 months at FCI McKean, at Bradford, PA.
On June 6, 2002, after serving 60 months, on June 16, 2005, Moshier was transferred to USP Lewisburg,
regarding a displinary matter.

BASIS OF CLAIM

In the fall of 2006, the prison administration at USP Lewisburg accepted a prisoner by the name of
Lawrence Logan [1]15586-045, originating from ADX, a super maximum security facility located in
Marion, Illinois. This prison was built partially below ground to quarter the nations most violent
predator's, not suited to be incarcerated at other prisons due to their anti-social and volatile
behavior. Lawrence Logan suited this criteria and the still unanswered question is — why was
Logan removed from ADX in the first instance? As documented Logan is very dangerous. As soon as
Logan stepped off the bus at USP Lewisburg, within 12 hours he was apprehended conseling two
home-made knives on his person. Logan was immediately wrestled to the ground by two husky guards
on their watch, putting their lives in jeopardy, as Logan struggled violently to get free. Logan

was taken directly to special housing unit (SHU) and secured solo. However, on December 18, 2006, just ninety days proceeding this event, Captain E. Bradely acting under Warden Troy Williams, released inmate Logan into general population. Inmate Logan was ordered to report to cell #105 A-Block, occupied by Moshier. Un-be-knowst to Moshier, was inmate Logan's violent history, and where Logan originated from or, Logan's recent release from SHU, for weapons possession. Moshier recalls that Logan wasn't in the cell 5 minutes when he began to complain about the age of the prison, its dark, dank, filthy, and full of niggers. He complained about the food, and said "I've got to find a way out of here and get back to ADX", angry and very malcontent with his surroundings. On December 19, 2006, Moshier was becoming very alarmed by Logan's action's and threatening statements. Inmate Logan told Moshier that he killed an inmate in one of the prisons he was in, and that "he died real nice". Logans continuous ranting and raving about his life and how it turned out, became more like threats to himself and others, causing mental and emotional stress to Moshier. The next morning December 20, 2006, Moshier went directly to his case manager, Mr. Wagner, and informed him of the threats and approbrious abusive words and threats by inmate Logan. Mr. Wagner admitted to Moshier that he was aware of inmate Logan's record, and perceived him as a dangerous person. Mr. Wagner assured Moshier he he would arrange to move Logan from cell #105 to another location before the week was out. Moshier was relieved, he told Mr. Wagner " I just can't lie awake for another night watching to see what this guy was going to do " However, when Moshier returned from work later that afternoon Logan still had not moved out of the cell as Mr. Wagner promised. It was too late in the day to try and contact the counselor, or case manager, they went home for the day. Now Moshier was compelled to spend another night lying awak fearing that Logan might carry out his threats. On December 21, 2006, " as soon as I heard the guard unlock the door, as I turned over, Logan was standing over me just glaring at me with a blank look on his face. He had a knife or sharp piece of metal in each hand. Moshier bolted out the cell door, and went directly to Mr. Metzger's office and appealed to him to remove Logan from his cell, that he's afraid that Logan's going to kill him. In the ensuing conversation, Mr. Metzger said he was apprised of Logan's violent record, and he assured Moshier that he would move Logan this day. On December 21, 2006, Moshier returned to his cell, and Logan was gone.  Moshier stated to Mr. Metzger " I was relieved, I could not have lay awake another night without sleep". On December 23, 2006, around 6:25 P.M., Moshier went to the shower room. Moshier states: I was in there about five minutes soaped up, shampood my hair, about to rinse, when I felt a sharp pain in my back. As I whipped around there was Logan with a knife in each hand, stabbing and slashing me. I yelled and screamed as I ran barefoot from the shower naked, running down the corridor with Logan stabbing me as I ran, I lost my shower sandles and slipped on the floor, I yelled for the guard but he didn't come to my aid, Logan was on my back stabbing me repeatedly with furious pounding strokes. Logan pinned me down with his body, stabbing me in my eye's and neck. I did the best I could to defend myself, but he seemed so strong, and I was all wet and slippery from the blood and soap in my eyes, I couldn't see, couldn't breath and started to panic, then I passed out. All I remember was someone calling my name and repeating "stay with us, stay with us". I could here conversation, but nothing else. When I awoke, I was on the operating table at Giesinger Medical Center, in Danville, PA. The doctor's were busy giving me blood tranfusions from my blood loss, and stitching up my wounds. In all Logan stabbed me 21 times in my back, face, stomach, chest, shoulder, and arm. The wounds in my back, stomach, and chest, were life threatening. While I lay on the table I overheard a conversation between two of the guards that escorted the ambulance to the hospital, that Logan should never have been released from SHU in the first place! "He's a maximum security inmate". That Logan has had 24 recorded incidents against his conduct to various staff and other inmate's. Two rolls of film were taken at the crime scene, BOP policy, however, the prison has declined for me to see or possess facsimiles to further buttress my case. However, recently after repeated letters and the Freedom of Information Act, the prison officials reluctenly released a few photo's an a very Limited amount of documents. Those they did release were missing whole sentences and dates, in other words (incomplete).

I have numerous scars throughout my upper torso, neck, and face from Logan's attack. The worse and most troublesome is my lower lip, it is lop-sided and numb, from severed nerves. My left elbow is numb, because Logan cut into the tendon. The surgeon at the hospital told me plastic surgery will hide the disfiguring scar on your lower lip, however, as far as your elbow is concerned the scar tissue will be healed by the time of your release; the prison doesn't pay for this type of surgery, only in exigent life threatening circumstances. To go in there again in the future the chances are "iffy" at best for a favorable outcome, you will just have to live with it!

The staff at USP Lewisburg have refused to correspond with me regarding this incident, they ignore my letters of request for medical records. I've been refused any procedural remedied issued by the BOP. I was transferred to FCI Schuylkill to further restrain my course of rights to further pursue this matter.

## DEFENDANTS IN DUE COURSE

A. Warden, Troy Williams et al,

B. Captain E. Bradely

C. Mr. Wagner, (case Mangr.)

D. Mr. Childress, (unit Mangr.)

E. Mr. Metzger, (unit 2 Counselor)

F. Federal Bureau of Prisons et al.

## DISCUSSION

The Warden- an official in charge in the operation of a prison. His capacity is to run the prison efficiently and safely, and has complete control over his jurisdiction/tenor in the daily course of operations during his watch. All others in the administration of the prison are subordinate to him. The Warden is provided with a congenial staff to confer and inform the Warden to the daily count of inmates on a 24 hour basis. The Warden is also apprised as to whom is coming and going in "His" prison, especially those marked as very dangerous and to alert staff. The Warden most assuredly would have known that inmate Lawrence Logan was on the premises- especially that he was a former convict that just arrived from a super-max high security facility such as ADX! And most assuredly informed of the incident when Logan first arrived, that two guards had to forcibly subdue and restrain him. The Warden should have taken appropriate measures to insure the safety of staff as well as other inmates by never letting this dangerous individual to be released from SHU, and mingle in population.

The captain is subordinate to the Warden; in the Wardens absence, the Captain is subordinate to the assistant warden; in the assistant wardens absence; the Captains decisions prevail, his signature suffice's in the Wardens absence.

The case manager's job is daily, monthly, taking care of the minute inmate problems as they arise, schooling, programming and transfer's. Also problems that may be latent and brought to their attention as Mr. Moshiers. The counselor's very rarely "counsel" the inmates appointed to their case load. These are most sinecure jobs that the case manager could incorporate into his/her daily case load. At best in the prison administration they became complacent with the high numbers of inmates passing through, their treated like "cattle".

Prisoners like Logan must never escape their notice, or, they simply don't care. In any event Moshier was nearly killed, and permanently disfigured because of the deliberate indifference of the Warden and his subordinates to allow a volatile dangerous individual such as Lawrence Logan to prey upon inmates or staff just because he is miserable and feels his life is not worth living.

In closing the prison administration was aware of this dangerous maniac and his propensity to violent outbursts of aberrant devious behavior.

The Constitution imposes on officials a duty to
protect: " take reasonable measures to guarantee
the saftey of inmates" and to protect them from
"violence at the hands of other prisoners".

Mr. Moshier is still a U.S. citizen, and is supported by the Eighth Amendment of our Constitution. The officials in charge were informed of inmate Lawrence Logan's violent past. Viz: " did the late President Richard Millhouse Nixon lead us all to believe he didn't know what was going on in the basement?" Does one tease a rattlesnake to see if it has fangs!!!

The prison staff at USP Lewisburg most assuredly had known by releasing Lawrence Logan into population, and especially after his known remarks by Moshier to the staff went unheeded. During Logans 90 day displinary punishment, concealing two weapons, the Captain should have paid attention that trouble was brewing. While in SHU Logan made no secret of his intentions. Moshier warned both Mr. Wagner and Mr. metzger of what Logan declared a full three days before Logan attacked him.

## C O N C L U S I O N

Deliberate Indifference is an intent or "state of mind" requirement. It exists when an official[s] are aware of a serious danger to an inmate[s] and yet is indifferent (unconcerned, uncaring) to that danger. Surely Moshier was put in harms way by the Warden; Captain; case manager; and counselor. They admittedly knew of Lawrence Logans violent past history, and his threats to the staff, and informed by Moshier some 2 to 3 days prior to his attack on Moshier. How much more advance notice do officials that are trained and work daily among dangerous individuals to see, hear, and have inmate records before them, informing them of the inherent danger that exists?

Some people believe that this is what convicted citizens
deserve for having committed crimes. These people are
wrong. "Being violently assaulted in prison," the
Supreme Court stated, "is simply not part of the penalty
that criminal offenders pay for their offenses against
society.

Prison officials well know the calibre of the types of people they quarter. Bank robbers, drug dealers, rapists, killers, etc. They also know that fights are common and disagreement sometimes leads to violence. To window an inmate by ignorance or lack of responsible duty to protect inmates from dangerous psychopath's is clearly a failure by the administration to either not take Mr. Moshiers complaints seriously or lack of discretion on the part of the Warden and Captain for releasing Lawrence Logan from SHU, and targeting Moshier for no other reason than to get transferred back to ADX.

These indiscretions by and large from all the defendants set the stage to motivate Logan, and created a substantial risk of serious harm and almost death to Moshier. A trier of fact would determine that a malicious repeated stabbings would be deemed as "serious" filling the element of "failure to protect". It's a strong likelihood that the evidence presented concures from the Warden all the way down to the counselor, and unit manager. All were aware of Logans violent record and "passed the buck" so to speak, and let someone else worry about Lawrence Logan! The staff failed to reasonably respond and allowed Logan to roam the prison and seek out a target.

The staff at USP Lewisburg, failed Mr. Moshier by not pursuing reasonable measures to protect him or any inmates enabling Logan to carry out his vicious attack.

For the reasons and recorded facts presented, movant Moshier, prays this court will GRANT him relief and compensatory damages to his person.

Respectfully submitted,

*Donald L. Moshier JR*

Donald L. Moshier, Jr.
#10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

Date: _13_ day, _MARCH_ , 2008

** I've filed a tort claim on August 16, 2007, and to date it remains unanswered. I've filed a petition to the Government to show cause why this summary judgment should not be granted in favor of the petitioner. The six month tolled time to respond was up on February 29, 2008.

(5)

## V.   REQUEST FOR RELIEF

State exactly what you want the Court to do for you.  If you are a state or federal prisoner, and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records or parole release), you must file your claim on a Habeas Corpus form, pursuant to 28 U.S.C. §2254, 28 U.S.C. §2255, or 28 U.S.C. §2241.

Plaintiff seek's compensatory damages for trauma, disfigurement, loss of mobility of his left arm, loss of his general health, which cannot be replaced or restored, due to the damage my body suffered from 21 stab wounds. Also, I'm seeking punitive damages because of the defendant's et al, reckless and callus indifference by allowing a dangerous psychopath to assault and attempt to kill me. The officials of USP Lewisburg, knew in advance the situation and harm they exposed me too, by quartering inmate Lawrence Logan in a 9x11 foot cell with Donald L. Moshier, with no means of escape.

                                                        _____
                                                        Signature of attorney, if any

## DECLARATION UNDER PENALTY OF PERJURY

I, the undersigned, declare (or certify, verify, or state), under penalty of perjury, that I am the plaintiff in the above action, that I have read the above complaint and that the information contained therein is true and correct.  28 U.S.C. §1746; 18 U.S.C. §1621.

Signed this 13 day of __March__ , _____, 19: 2008

                                        _Donald L. Moshier R_
                                        Signature of Plaintiff

# F E D E R A L   B U R E A U   O F   P R I S O N S

UNITED STATES OF AMERICA
        Defendants,

FEDERAL BUREAU OF PRISONS et al,
Warden. Troy Williams;
Captain E. Bradely;
Mr. Wagner, (Case Manager);
Mr. Childress, (Unit Manager);
Mr. Metzger, (Unit Counselor)

           -vs-

DONALD LEROY MOSHIER, JR.
        Plaintiff.

Case No. *TRT-NER-2007-* 05883

**FILED**
**SCRANTON**

MAR 2 0 2008

PER — DEPUTY CLERK

Date 8/16/07

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) |
|---|---|
| Hank Sadowski, Regional Counsel<br>Northeast Region, Bureau of Prisons<br>U.S. Customs House, 7th Floor  Second &<br>Chestnut Sts. Philadelphia, PA 19106 | Donald Leroy Moshier, Jr.<br>#10924-052<br>FCI Schuylkill, P.O. Box 759<br>Minersville, PA 17954- 0759 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>8/18/61 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>December 23, 2006 | 7. TIME (A.M. OR P.M.)<br>6:30 |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

PLEASE SEE ATTACHED SECTION    Pages 1-7

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

PLEASE SEE ATTACHED SECTION

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| PLEASE SEE ATTACHED SECTION<br>BOP Medical  Exhibit  A<br>Page 10 | PLEASE SEE ATTACHED SECTION    (WITNESSES)<br>Page 9 | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>N/A | 12b. PERSONAL INJURY<br>$ 10,000,000,00 | 12c. WRONGFUL DEATH<br>N/A | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$ 10,000,000,00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>Donald L Moshier JR | 13b. Phone number of person signing form<br>Contact FCI Schuylkill | 14. DATE OF SIGNATURE<br>8/16/07 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

95-109    NSN 7540-00-634-4046    STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

# MEMORANDUM OF RECORD

FROM: (Present address)

    MOSHIER, JR. DONALD
    #10924-052
    FCI Schuylkill
    P.O. Box 759
    Minersville, PA 17954

    (Former address)

    U.S.P. Lewisburg
    P.O. Box 1000
    Lewisburg, PA

    (Former address)

    FCI McKean
    P.O. Box 5000
    Bradford, PA

TO:

    FEDERAL BUREAU OF PRISONS,
    Northeast Region, Regional Office,
    U.S. Customs House, 7th Floor,
    2nd and Chestnut Streets, Philadelphia, PA 19106

Date 8/16/07

## FACTUAL   BACKGROUND

Donald L. Moshier, Jr. was convicted of possession of a narcotic substance (methamphetamine), a non-violent Class B Felony, on <u>April 26, 2002</u>, to serve 120 months at FCI McKean, at Bradford, PA. On <u>June 5, 2002</u>, after serving 60 months, **on** <u>June 16, 2005,</u> Mr. Moshier was transferred to USP Lewisburg, regarding a displinary matter.

## BASIS   OF   CLAIM

In the fall of <u>2006</u>, the prison admniistration at USP Lewisburg accepted a prisoner by the name of Lawrence Logan #15586-045, originating from ADX a maximum security facility located in Marion, Illinois. This prison was built partially below ground to quarter the nations most violent predator's, not suited to be incarcerated at other prisons dur to their anti-social and volatile behavior. Lawrence Logan suited this criteria and the still unanswered question is-- why was he removed from ADX in the first instance? As soon as Logan stepped off the bus at USP Lewisburg, within 12 hours he was apprehended consealing two home-made knives on his person. He was immediately wrestled to the ground by two guards on watch, putting their lives in jeopardy, as Logan struggled violently to get free. Logan was taken directly to (SHU) special housing unit and secured solo. However, on December 18, 2006, just ninety days proceeding this event, Captain E. Bradely acting under Warden Troy Williams, released inmate Logan into general population. Inmate Logan was told to report to cell#105$^L$ A-Block, occupied by Mr. Moshier. Un-be-knowst to Mr. Moshier, was inmate Logans violent history, and where he originated from, or that Logan was just released from SHU,

for possession of two weapons. Inmate Logan wasn't in the cell 5 minutes when he began complaining to Mr. Moshier, about the age of the prison, its dark, dank, and filthy and full of niggers. He complained about the food, and said "I've got to find a way out of here and get back to ADX", angry and very malcontent with his surroundings. On December 19, 2006, Mr. Moshier was becoming very alarmed by Logans actions and threatening statements. Inmate Logan told Mr. Moshier that he killed an inmate in one of the prisons he was in, and that "he died real nice". Inmate Logans continuous ranting and raving about his life and how it turned out, became more like threats to himself and others, causing mental and emotional stree to Mr. Moshier. The next morning December 20, 2006, Mr. Moshier went directly to his case manager, Mr. Wagner, and told him of the threats and approbrious abusive words by inmate Logan. Mr. Wagner admitted to Mr. Moshier that he was aware of inmate Logans record and perceived him as a dangerous person. Mr. Wagner told Mr. Moshier he would arrange to move Logan from cell 105 to another location before the week was out. Mr. Moshier was relieved, he told Mr. Wagner "I just can't lie awake for another night watching to see what this guy was going to do". However, when Mr. Moshier returned from work later that afternoon, Logan still had not moved out of the cell. It was too late in the day to try and contact the counselor, or case manager, they went home for the day. Now Moshier had to spend another night lying awake fearing that Logan might carry out his threats. On December 21, 2006, as soon as I heard the guard unlock the door, as I turned over, Logan was standing over me just staring at me with a blank look on his face. He had a knife or sharp piece of metal in

each hand. Mr. Moshier bolted out the cell door, and went directly to Mr. metzgers office and appealed to him to remove Logan from his cell, that he's afraid that Logans going to kill him. In the ensuing conversation Mr. Metzger said he was aware of inmate Logans record, and assured Moshier that he would move Logan this day.

On December 21, 2006, Moshier returned to his cell and Logan was gone. " I was relieved, I could not have lay awake another night without sleep". On December 23, 2006, around 6:25 p.m., Moshier went to the shower room. Moshier state: I was in there about 5 minutes soaped up, shampood my hair, about to rinse, when I felt a sharp pain in my back. As I whipped around there was Logan with a knife in each hand, stabbing, and slashing me. I yelled and screamed as I ran from the shower naked and barefoot, running down the corridor with Logan stabbing me as I ran. I yelled for the guard on watch, but he did not come. I became hysterical as Logan was furiously stabbing me as I slipped and fell to the floor. Logan pinned me down and kept stabbing me in my neck and eye's. I did the best I could to defend myself, but he seemed so strong and I was all wet and slippery from the blood and soap in my eyes, I could hardly see, couldn't get my breath, and started to panic, then I passed out.

When I awoke, I was on the operating table at Giesinger Medical Center, in Danville, PA. The doctor's were busy giving me blood transfusions from my blood loss, and stitching up my wounds. In all Logan stabbed me 21 times in my back, face, stomach, chest, shoulder, and arm. The wounds in my back, stomach, and chest, were life threatening. While I lay on the table I overheard a conversation between two of the guards that escorted the ambulance to the hospital

that Logan should never have been released from SHU in the first place."He's a maximum security inmate" That Logan has had 24 recorded incidents against his conduct to various staff and other inmates. Two rolls of film were taken at the crime scene, BOP policy, however, the prison has declined for me to see or possess facsimiles to further buttress my case. I have numerous scars throughout my upper torso neck and face from Logans attack. The worse and most troublesome is my lower lip, it is lop-sided and numb, from severed nerves. My left elbow is numb, because Logan cut into the tendon. The surgeon at the hospital told me plastic surgery will hide the disfiguring scar on your lower lip, however, as far as your elbow is concerned the scar tissue is already began to heal, to go in there again is "iffy" at best for a favorable outcome, you will just have to live with it!

The staff at USP Lewisburg have refused to correspond with me regarding this incident, They ignore my letters of request for medical records. I've been refused any procedural remendied issued by the BOP. I was transferred to FCI Schuylkill to further restrain my course of rights to further pursue this matter.

## DEFENDANTS   IN   DUE   COURSE

    a. Warden, Troy Williams et al,
    b. Captain E. Bradely
    c. Mr. Wagner, (case manager)
    d. Mr. Childress, (unit manager)
    e. Mr. Metzger (unit 2 counselor)
    f. Federal Bureau of Prisons et al

DISCUSSION

The Warden- An official in charge in the operation of a prison.
His capacity is to run the prison efficiently and safely, and has
complete control over his jurisdiction/tenor in the daily course of
operations during his watch. All others in the administration are
subordinate to him. The Warden is provided with congenial staff to
confer and inform the warden to the daily count of inmates on a 24
hour basis. The warden is alao apprised as to to whom is coming and
going in "His" prison, especially those marked as very dangerous
and to alert staff. The warden most assurdly would have known that
inmate Lawrence Logan was on the premises- especially that he has
an inmate that just arrived from a super-max high security facility
such as ADX. And most assuredly informed of the incident when Logan
first arrived, that two husky guards had to forcibly subdue and
restrain him. The warden schould have taken appropriate measures
to insure the safety of staff as well as other inmates by never
letting inmate Logan to be released from SHU, and mingle in population.

The Captain is subordinate to the warden; in the wardens absence,
the Captain is subordinate to the assistant warden; in the assistant
wardens absence; the Captains decisions prevail, his signature
suffice's in the wardens absence.

The case manager's job is daily, monthly taking care of the
minute inmate problems as they arise, schooling, programming and
transfers. Also problems that may be latent and brought to their
attention as to Mr. Moshiers. The counselors very rarely "counsel"
the inmates appointed to their case load. These are most sinecure
jobs that the case manager could incorporate into his/her daily

case load. At best in the prison administration they become complacent with the hugh numbers of inmates passing through their treated like "cattle". Prisoners like Logan should never escape their notice, or, they simply don't care. In any event Mr. Moshier was nearly killed, and permanetly disfigured because of the diliberate indifference of the the warden and his subordinates to allow a volatile dangerous individual such as Lawrence Logan to prey upon inmates or staff just because he is miserable and feels his life is not worth living.

In closing the prison administration was aware of this dangerous individual and his propensity to violant outbursts of aberrant devious behavior.

> **The Constitution imposes on officials
> a duty to protect:" take reasonable
> measures to guarantee the saftey of
> inmates" and to protect them from
> "violence at the hands of other prisoners".**

Mr. Moshier is still a U.S. Citizen, and is supported by the Eighth Amendment of our Constitution. The officials in charge were informed of inmate Lawrence Logans violent past. Viz: "did the late President Richard Millhouse Nixen lead us all to believe he didn't know what was going on in the basement?" Does one tease a rattlesnake to see if it has fangs?

The prison staff at USP Lewisburg most assuredly had known by releasing Lawrence Logan into population, and especially after his remarks to staff during his 90 day displinary punishment for the two weapons that trouble was brewing. Mr. Moshier warned both Mr. Wagner and Mr. Mentzger of what Logan declared a full three days before Logan attached him.

CONCLUSION

Deliberate Indifference is an intent or "state of mind" requirement. It exists when an official[s] are aware of a serious danger to an inmate[s] and yet is indifferent (unconcerned, uncaring) to that danger. Surely Mr. Moshier was put in harms way by the warden; captain; case manager; and counselor. They addmitedly knew of Lawrence Logans violent past, and his threats to staff, and informed by Mr. Moshier some 2-3 days prior to his attack on Mr. Moshier. How much more advance notice do officials that are trained and work daily amoung dangerous individuals to see, hear and have inmate records before them, informing them of the inherent danger that exists?

Thirty to sixty day's notice are served on an institution that an inmate will arrive at their facility to continue to serve out the remaining time. The officials were well aware that Lawrence Logan was arriving from ADX, and his criminal history.

> **Some people believe that this is what convicted citizens deserve for having committed crimes. These people are wrong. "Being violently assualted in prison," the Supreme Court stated", is simply not part of the penalty that criminal offenders pay for their offenses against society".**

Prison officials well know the calibre of the types of people they quarter. Bank robbers, drug dealers, rapists, killers, etc. They also know fights are common and disagreement sometimes leads to violence. To window an inmate by ignorance or lack of responsible duty to protect inmates from other dangerous psychopath's is clearly a failure by the administration to either not take Mr. Moshiers complaints seriously or lack of discretion on the part of the warden

and captain for releasing Lawrence Logan from SHU, and targeting Mr. Moshier for no other reason than to get transferred back to ADX. These indiscretions by an large from all the defendants set the stage to motivate Lawrence Logan, and create a substantial risk of serious harm to Mr. Moshier. A trier of fact would determine that a malicious repeated stabbings would be deemed as "serious" filling the element of "failure to protect". It's a strong likelihood that the evidence presented concures from the warden all the way down to the counselor, unit manager. All were aware of Lawrence Logans record and "passed the buck" so to speak, and let someone else worry about Lawrence Logan! The staff failed to reasonably respond and allowed Logan to roam the prison and seek out a target.

The staff at USP Lewisburg, failed Mr. Moshier by not taking reasonable measures to protect him or any inmates enabling Logan to carry out his vicious attack. For the reasons and recorded facts presented, movant Moshier, prays this court will GRANT him relief and compensatory damages to his person.

Respectfully submitted.

Mr. Donald Leroy Moshier, Jr.,
#10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

Date 8/16/07

## DECLARATION OF DONALD LEROY MOSHIER JR.

I, Donald Leroy Moshier, Jr., declare, under the penalty of perjury, 28 U.S.C. §1746, as follows:

I am the defendant herein, and the information contained therein is true and correct to the best of my knowledge and belief.

So declared this _16TH_ day of _August_, 2007.


Respectfully submitted,

Donald Leroy Moshier, Jr.
#10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

Date _8/16/07_

WITNESSES

Page 8

Ryan J. Parkyn, NREMT-P    (USP Lewisburg)
Mr. ALAMA, FERDINAND  N, PA (USP Lewisburg)


Lt. McFadden  (USP Lewisburg)
Lt. Heath     (USP Lewisburg)

Mr. Wagner, (case manager,(USP Lewisburg)
Mr. Metzger,(unit 2 counselor,(USP Lewisburg)

USP Lewisburg - inmates
Jimmy Craft
Lou Galuccio
G. Leacock

Geisinger Medical Center

D. Constantinou M.D.
DR. Umoh M.D.
Roz Atherton PA
Bruce Simmons M.D.
John T. Riehl M.D.

BOP Medical

Exhibit A

12/23/06

CRONOLOGICAL RECORD OF MEDICAL CARE     Donald Moshier
(2) pages both sides.                    DOB 08/18/61

SEE. Administrative Note:

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION (Sign each entry) |

**12/23/06**
**1840**

Admin Note:

   Assistance call on A-Block. No details given following response. Arrived to find I/m sitting semi-slumped against a wall locker at the entrance of A-Block. I/m is covered with blood and large quantities of blood are noted on floor. I/m also has no clothes on, stating "I was taking a shower." HPI: I/m states that he was taking a shower when someone began stabbing him. I/m states he then ran towards the officers station and the entrance to A-Block. Assistance call was then immediatly

**Vitals**
**BP: 130/P**
**HR: 130/min**
**Resp: 26 and**
**Labored**
**Pain: 2/2**

initiated by the A-Block Officer. I/m has multiple puncture/stab wounds on his torso and upper extremities. I/m also complains of Shortness of Breath, Chest pain, and abdominal pain. I/m denies Loss of consciousness, Aumble (error) numbness or tingling in any extremity, or recent illness. Physical Exam: I/m found sitting semi-slumped on the floor, Awake, Alert, and Oriented to person, place, and time. I/m is in obvious distress as he is covered in blood and has multiple puncture/stab wounds. I/m can speak full sentences. SKIN: Head and neck appear to be pale and feel cool to touch. Head and Neck are the only skin areas not covered with Blood, for evaluation of Skin on initial exam. I/m has a large laceration appox. 2.5/3.0 inches in length. Right cheek. PUPILS: equal, round, and reactive to light: ————————————> Continued ———>

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

| PATIENT'S IDENTIFICATION: (For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.) | REGISTER NO. 10924-052 | WARD NO. |
|---|---|---|

Moshier, Donald
DOB: 08/18/1961

**CHRONOLOGICAL RECORD OF MEDICAL CARE**
Medical Record

STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|

12|23|06

1840

Admin Note Continued:

No tr(error) tracheal deviation or JVD noted. No trauma noted to oropharynx and no bleeding noted. LUNGS: Clear to auscultation in anterior fields. CHEST: equal rise and fall noted with inspiration and expiration. Approx 1.5/2.0 Deep laceration noted just below Ziphoid process. No air escape or sub-cutaneous emphysema noted from this wound. No flail segments noted and no crepitus noted with palpation. ABDOMEN: Firmness noted c̄ palpation and tenderness with deep palpation. No external trauma noted to abdomen. Firmness and tenderness noted all four quadrants. Neck + Back: Neck is inline with no deformities, crepitation or tenderness with palpation. BACK: I/M has five deep lacerations to the left Back, all approx. one to two inches in length. No air escape noted with inspiration or expiration. Also no sub-cutaneous emphysema noted. Back is inline ā(error) with no deformities or crepitation upon palpation. No priapism or incontinence noted. Extremities: I/M moves all extremities on command and with good purpose. I/M has Three Deep lacerations to the left arm, One small laceration is also noted on left hand. Adequate distal pulse, sensation, and modality noted in all extremities. Arterial Hemorrhage noted from Right cheek wound, all others appear to venous. INTERVENTIONS: Following initial exam and assuring adequate respiratory status and in such close proximity to Urgent care room, decision was made to immediatly evacute I/M from the scene. I/M was taken via litter to urgent care room. I/M was placed on O₂ via NRB at 15 lpm. Dressings were applied to all wounds with manual pressure applied. Cardiac(error) Manual C-Spine taken. ————————— Continued ——————→

UNCLASSIFIED
BUT

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTI

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION *(Sign each entry)* |

| | |
|---|---|
| 12/23/06 1840 | Admin Note Continued: Cardiac monitor applied showing ST at 130/min. No ectopy. |
| | IV established with 16 gauge Insyte and 1000 cc's NSS and Blood-Y tubing. IV is patent, secured, and run wide. ~~Second I (error)~~, First IV located in LAC. Second IV established in RAC with 16 gauge Insyte and 1000 cc's and 10 gtts/set and also run wide. Upon outside EMS arrival (Evan. Medic 60 and William Cameron Ambulance) Report was given. all equipment and O₂ was transffered to portable. While moving I/M from USP litter to Wm. Cameron amb. litter, I/M was placed on LSB, C-collar, CIDs, and spider straps then applied. Outside EMS was contacted at approx 1849. I/M was sent to GMC with Evan Medic 60 and Wm. Cameron Amb. Dr. Bussanich notified as well as HSA Brown following incident. |

Bussanich
BUSSANICH, M.D.
12.26.2006

Ryan J. Parkyn, NREMT-P
USP Lewisburg

| | |
|---|---|
| 12-24-06 0300 | Admin Note: I/M admitted to GMC ABagail 4th Floor SCU 15 ① Surgery need for ABD, ① Drainage tube in © Chest i Posterio [Em ⑥] |

Bussanich
BUSSANICH, M.D.
12.26.2006

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

| PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)* | REGISTER NO. 10924-052 | WARD NO. |
|---|---|---|

Moshier, Donald
DOB: 08/18/1961

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record

STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR

PRINTED ON RECYCLED PAPER

NSN 7540-00-434-4176

AUTHORIZED FOR LOCAL REPRODUCT.

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION *(Sign each entry)* |

**12/23/06**
**1840**

Admin Note Continued: Cardiac monitor applied showing ST at 130/min. No ectopy
IV established with 16 guage Insyte and 1000 cc's NSS and
Blood-Y tubing. IV is patent, secured, and run wide.
~~Second IV (error)~~, First IV located in LAC. Second IV established
in RAC with 16 guage Insyte and 1000 cc's and 10 gtts/set and
also run wide. Upon outside EMS arrival (Evan. Medic 60 and William
Cameron Ambulance) Report was given. all equipment and O₂ was
transffered to portable. While moving I/m from USP litter to Wm.
Cameron amb. litter, I/m was placed on LSB. C-collar, CIDs, and
spider straps then applied. Outside EMS was contacted at approx 1849.
I/m was sent to GMC with Evan Medic 60 and Wm. Cameron Amb.
Dr. Bussanich notified as well as HSA Brown following incident.

*[signature]* Bussanich MD
12.26 2006

*[signature]* Ryan Parkyn NREMT P

**Ryan J. Parkyn, NREMT-P**
**USP Lewisburg**

**12-24-06**
**0300**

Admin Note:
I/m admitted to GMC Abigail 4ᵀᴴ Floor SCU 15
① Surgery Need For ABD, ② Drainage tube in ① Chest 1 Poss ②
Em

*[signature]* Bussanich MD
12.26 2006

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

Moshier, Donald
DOB: 08/18/1961

| REGISTER NO. | WARD NO. |
|---|---|
| 10924-052 | |

**CHRONOLOGICAL RECORD OF MEDICAL CARE**
Medical Record

**STANDARD FORM 600** (REV. 6-97)
Prescribed by GSA/ICMR

PRINTED ON RECYCLED PAPER



Donald L. Moshier, Jr.
#10924-052
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

RECEIVED
SCRANTON

MAR 2 0 2008

PER _____ DEPUTY CLERK

William J. Nealon Federal Buldg.
and U.S. Courthouse
P.O. Box 1805
235 N. Washington Ave.
Scranton, PA 18501-1148